UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

THOMAS L. AKINS,

     Plaintiff,

v.                              Case No.:  2:25-cv-346-SPC-NPM

LIEUTENANT H. VELASQUEZ
and OFFICER RICHTER,

     Defendants.

_____/

## OPINION AND ORDER

Before the Court is Defendant H. Velasquez's Motion to Dismiss.  (Doc. 21).  Plaintiff Thomas L. Akins responded, and Velasquez filed a reply.  (Docs. 30, 36).  For the reasons below, the Motion is granted in part and denied in part.

### Background

Akins is a prisoner of the Florida Department of Corrections (FDOC).  He claims that Velasquez—a "housing lieutenant" at Charlotte Correctional Institution (Charlotte CI)—filed a false disciplinary charge against him in retaliation for his complaints about a broken toilet.  (Doc. 12 at 1, 10).  Akins also alleges that Defendant Officer Richter failed to intervene to stop the retaliation.  (*Id.* at 11).  Richter has not appeared in this action.  But Velasquez moves to dismiss, raising Eleventh Amendment and qualified immunity and

arguing that Akins fails to state a claim against him. (Doc. 21). The Court recounts the factual background as pled in the Amended Complaint, which it must take as true to decide whether Akins states a plausible claim. *See Chandler v. Sec'y Fla. Dep't of Transp.*, 695 F.3d 1194, 1198-99 (11th Cir. 2012).

On February 1, 2025, Akins was moved to a cell with a broken toilet. (Doc. 12 at 2-3). The toilet would not flush, and it was filled with feces, urine, and toilet paper. (*Id.* at 3). For the rest of the day, Akins repeatedly informed "all correctional officer[s] on shift" about the toilet. (*Id.*) A "work order" was entered. (*Id.*) The next day, Akins again complained about the toilet to prison officials, but "no help was offered." (*Id.*)

Around 10:00 a.m. that morning, Akins called his mother and sister. (*Id.*) He told them about "the maintenance problem he was experiencing and . . . how he was force[d] to live under unhealthy conditions." (*Id.* at 3-4). He then asked them to call Charlotte CI and inform "a higher official" about the broken toilet. (*Id.* at 4). After hanging up, they "immediately" called the facility and told "correctional personnel" about "Akins's situation." (*Id.*)

One hour later, Velasquez and Richter appeared outside Akins's cell. (*Id.*) The officers placed Akins and his cellmate in "hand restraints" and then strip searched them. (*Id.*) No weapons were found. (*Id.*) Moreover, no weapons were "present" in the cell. (*Id.* at 5).

Akins was escorted to the shower area while Velasquez and Richter searched the cell. (*Id.*) A few minutes later, Velasquez approached Akins and said he had found a homemade knife in the broken toilet. (*Id.*) According to Akins, Velasquez had planted the knife. (Doc. 12-1 at 14). Velasquez told Akins he would receive a disciplinary charge for "possession of a weapon." (Doc. 12 at 5). As Akins was being escorted back to his cell, Velasquez said, "You need to learn to keep yo' mouth shut about things that happen[] in Charlotte's prison." (*Id.* at 5-6).

Akins filed an "emergency grievance" about Velasquez's false disciplinary charge, but it was denied. (*Id.* at 6-7). One week later, on February 11, 2025, a hearing was held, and Akins was found guilty of possession of a weapon. (Doc. 12-1 at 10). He received a sentence of 50 days' disciplinary segregation. (*Id.*) Akins appealed, arguing that prison staff violated regulations and "due process" by failing to "photograph the evidence before removing it" from the toilet. (*Id.* at 30). On March 18, 2025, a representative of the FDOC Secretary overturned the disciplinary action, citing unspecified "technical errors" in "processing" the charge. (*Id.* at 33).

Based on the alleged retaliation, Akins seeks nominal, compensatory, and punitive damages, as well as declaratory and injunctive relief. (Doc. 12 at 12).

**Legal Standard**

When considering a motion to dismiss under Rule 12(b)(6), courts must accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The preferential standard of review, however, does not let all pleadings adorned with facts survive to the next stage of litigation. The Supreme Court has been clear on this point—a district court should dismiss a claim when a party does not plead facts that make the claim facially plausible. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a court can draw a reasonable inference, based on facts pled, that the opposing party is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678. This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)). And a plaintiff must allege more than labels and conclusions amounting to a formulaic recitation of the elements of a cause of action. *Twombly*, 550 U.S. at 555.

To state a 42 U.S.C. § 1983 claim, a plaintiff must allege that (1) the defendant deprived him of a right secured under the Constitution or federal law, and (2) the deprivation occurred under color of state law. *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) (citing *Arrington v. Cobb Cnty.*, 139 F.3d 865, 872 (11th Cir. 1998)). In addition, a plaintiff must allege and

establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation. *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1059 (11th Cir. 2001).

Akins is representing himself in this action. Courts hold the pleadings of *pro se* litigants to a less stringent standard than pleadings drafted by attorneys. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). But courts do not have a duty to "re-write" a *pro se* litigant's complaint to find a claim. *See Washington v. Dep't of Children & Families*, 256 F. App'x 326, 327 (11th Cir. 2007).

## Discussion

### A.    Qualified Immunity

Velasquez argues that qualified immunity bars Akins's First Amendment retaliation claim. (Doc. 21 at 10-18). "Qualified immunity protects government officials from individual liability unless they violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Snorton v. Owens*, 808 F. App'x 814, 820 (11th Cir. 2020). An official invoking qualified immunity must first show he was acting within the scope of his discretionary authority. *Id.* The burden then shifts to the plaintiff to show:   (1) the official violated a federal statutory or constitutional right; and (2) the unlawfulness of the official's conduct was clearly established at the time of the alleged violation.   *Id.* at 820-21.

5

Velasquez was plainly acting within the scope of his discretionary authority when he issued a disciplinary report against Akins.

"A federal right is 'clearly established' when 'at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he was doing is unlawful.'" *Anderson v. Vazquez*, 813 F. App'x 358, 360 (11th Cir. 2020) (quoting *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018)). "In other words, existing law must have placed the constitutionality of the officer's conduct beyond debate." *Wesby*, 132 S. Ct. at 589 (internal quotations omitted). To show that a legal principle is clearly established, a plaintiff must produce precedent "clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.*

Akins plausibly alleges that Velasquez violated his right to be free from retaliation. An inmate may sue prison officials "who retaliate against him for making" complaints about "the conditions of his confinement." *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008). To prevail on a First Amendment retaliation claim, "the inmate must establish these elements: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." *Id.*

6

Akins sufficiently pleads that he engaged in protected speech.  He alleges that he repeatedly complained to prison officials about the broken toilet, that he told family members about the issue, and that they called the prison on his behalf to complain about the "situation." (Doc. 12 at 3-4).  "It is well established that a prisoner exercises his First Amendment right" where, as here, "he complains about his conditions of confinement."  *Smith v. Sec'y, Fla. Dep't of Corr.*, 358 F. App'x 60, 62 (11th Cir. 2009).

Velasquez responds that Akins did not engage in protected speech because "his family's complaint about the conditions of his cell . . . is not attributable to" him.  (Doc. 21 at 9).  This argument is unpersuasive.  Akins himself exercised his right to free speech when he complained to correctional officials about the toilet and raised the matter with his family.  Indeed, Velasquez did not even mention Akins's family when he allegedly told Akins to "keep yo' mouth shut about things that happen[] in Charlotte's prison."  (Doc. 12 at 5-6).

Akins also pleads an adverse action.  According to him, Velasquez retaliated against him for complaining about the toilet by issuing a false disciplinary charge for possession of a homemade knife.  (*Id.* at 5).  As a result of the false charge, Akins was sentenced to 50 days' disciplinary segregation.  (Doc. 12-1 at 10).  This conduct—filing a false charge that leads to placement in disciplinary segregation—"would likely deter a person of ordinary firmness

7

from" complaining about prison conditions. *Smith*, 532 F.3d at 1276. Indeed, the Eleventh Circuit has held that "placing an inmate in disciplinary/segregated confinement constitutes an adverse action for purposes of a First Amendment retaliation claim." *Williams v. Radford*, 64 F.4th 1185, 1193 (11th Cir. 2023).

Velasquez contends that Akins did not suffer an adverse action because, even after his placement in disciplinary segregation, he "continued to file grievances about the conditions of imprisonment." (Doc. 21 at 14). But the Eleventh Circuit does not require retaliation plaintiffs to "show that they were actually chilled in the exercise of their First Amendment rights." *Bennett v. Hendrix*, 423 F.3d 1247, 1251 (11th Cir. 2005), *abrogated in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). As the court explained, "it would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity." *Id.* (cleaned up). Instead, the test is "objective," asking only whether "the allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Huggins v. Sch. Dist. of Manatee Cnty.*, 151 F.4th 1268, 1281 (11th

8

Cir. 2025) (cleaned up).  For the reasons just explained, Akins satisfies this standard.[1]

Lastly, Akins pleads "a causal relationship between the retaliatory action and the protected speech." *Smith*, 532 F.3d at 1276.  "To establish causation, the plaintiff must show that the defendant was subjectively motivated to discipline the plaintiff for exercising his First Amendment rights." *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (cleaned up).  The day he arrived in his new cell, Akins repeatedly complained to prison officials about the broken toilet.  (Doc. 12 at 2-3).  The next day, he told his family about the situation and asked them to call the prison on his behalf.  (*Id.* at 3-4).  Approximately one hour after the call, Velasquez allegedly planted a knife in the toilet, told Akins he would receive a disciplinary charge for "possession of a weapon," and said, "You need to learn to keep yo' mouth shut about things that happen[] in Charlotte's prison."  (*Id.* at 5-6).  These allegations plausibly suggest that Velasquez "discipline[d] [Akins] for exercising his First Amendment right[]" to complain about prison conditions.

---

[1] Velasquez claims that Akins served only three days in disciplinary segregation for possession of a weapon.  (Doc. 21 at 13-14).  According to Velasquez, three days after sentencing on that charge, Akins received a separate sentence of 60 days' disciplinary segregation for "lewd or lascivious exhibition."  (*Id.* at 13).  But the disciplinary report provided by Velasquez does not make clear whether the 60-day sentence for lewd or lascivious exhibition ran concurrently with—or consecutively to—the 50-day sentence for possession of a weapon. (Doc. 21-1).  Regardless, at the motion-to-dismiss stage, it is plausible to conclude that being falsely accused of having a weapon and serving three days in disciplinary segregation "would likely deter a person of ordinary firmness from" complaining about prison conditions.  *Smith*, 532 F.3d at 1276.

*Moton*, 631 F.3d at 1341; *see also Bumpus v. Watts*, 448 F. App'x 3, 7 (11th Cir. 2011) (plaintiff may show causation by pointing to "temporal proximity" between adverse action and protected speech).

Velasquez argues that Akins cannot show causation because he was "found guilty of a disciplinary infraction." (Doc. 21 at 17). Not so. "If a prisoner is found guilty of an actual disciplinary infraction after being afforded due process and there was evidence to support the disciplinary panel's fact finding, the prisoner cannot later state a retaliation claim against the prison employee who reported the infraction in a disciplinary report." *O'Bryant v. Finch*, 637 F.3d 1207, 1215 (11th Cir. 2011) (emphasis omitted). In other words, a prisoner cannot bring a "federal claim" based on a factual allegation "that conflict[s] with the disciplinary panel's decision." *Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019).

Akins was initially found guilty of possessing a weapon, but that finding was overturned on appeal one month later based on "technical errors" in "processing" the charge. (Doc. 12 at 33). Because the disciplinary decision was vacated, *O'Bryant* does not require dismissal of Akins's retaliation claim. *See Chaney v. Brooks*, No. 4:20-cv-215-AW-CAS, 2020 WL 13918212, at *1 (N.D. Fla. May 15, 2020) (retaliation claim based on false disciplinary reports cannot proceed "unless [plaintiff] can demonstrate that the challenged disciplinary reports have been reversed or otherwise vacated"); *Jackson v. Melia*, No. 4:13-

10

cv-398-WS, 2015 WL 1808892, at \*1 n.3 (N.D. Fla. Apr. 21, 2015) ("[Plaintiff] was initially found guilty of the violation alleged in the offending disciplinary report, but that result was overturned on appeal, making [plaintiff's] case distinguishable from the *O'Bryant* case.").

For the reasons explained above, Akins adequately alleges that Velasquez violated his right to be free from retaliation. So the question is whether the unlawfulness of Velasquez's actions was clearly established at the time. It was. When the incident occurred, it was clearly established that "[t]he First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech." *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003). It was also clearly established that prison officials cannot "retaliate against [an inmate] for making" complaints about "the conditions of his confinement." *Smith*, 532 F.3d at 1276. These cases put Velasquez on notice that his alleged conduct—filing a false disciplinary charge in retaliation for complaints about a broken toilet—violated the First Amendment.

## B.    Eleventh Amendment Immunity

Akins sues Velasquez in both his individual and official capacities. (Doc. 12 at 1). Velasquez correctly argues that the Eleventh Amendment bars Akins from seeking monetary damages from him in his official capacity. (Doc. 21 at 9-10).

11

The Eleventh Amendment states, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Absent an abrogation of immunity by Congress or a waiver of immunity by the state being sued, the Eleventh Amendment is an absolute bar to suit by an individual against a state or its agencies in federal court. *See Edelman v. Jordan*, 415 U.S. 651, 662 (1974).

"When the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." *Id.* at 663. "Thus, the rule has evolved that a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." *Id.* Congress has not abrogated Florida's immunity and Florida has not waived its Eleventh Amendment immunity. *See Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990). Therefore, Akins cannot sue Velasquez for monetary damages in his capacity as a state official.[2]

---

[2] Akins appears to allege that Velasquez violated the Fourth Amendment by searching his cell. (Doc. 12 at 10). It is unclear whether Akins intends to assert a freestanding Fourth Amendment claim. Regardless, any such claim would fail because "[p]risoners have no Fourth Amendment rights against searches of their prison cells." *Padgett v. Donald*, 401 F.3d 1273, 1278 (11th Cir. 2005).

## C.    Officer Richter

As noted above, Richter has not appeared in this action.  But Akins is a prisoner suing government officials and has been granted leave to proceed *in forma pauperis*.  So the Court has an independent obligation to screen the Amended Complaint to determine whether it states a claim against Richter.  *See* 28 U.S.C. §§ 1915(e), 1915A.  It does not.

Akins alleges that Richter failed to stop Velasquez from issuing the retaliatory disciplinary charge.  (Doc. 12 at 11).  To be sure, "an officer can be liable for failing to intervene when another officer uses excessive force."  *Priester v. City of Riviera Beach*, 208 F.3d 919, 924 (11th Cir. 2000).  But the Eleventh Circuit "does not recognize a duty to intervene in constitutional violations which occur outside of the excessive force context."  *Rivera v. Marin R*, No. 23-cv-62034, 2024 WL 2931030, at *4 (S.D. Fla. June 11, 2024) (collecting cases); *see also Tarantino v. Citrus Cnty. Gov't*, No. 5:12-cv-434-TJC-PRL, 2014 WL 4385550, at *11 (M.D. Fla. Sept. 4, 2014) ("The Court has found no United States Supreme Court or Eleventh Circuit authority, and the parties have cited none, in which a [§] 1983 action for failure to intervene survived based on a theory not involving the use of excessive force." (collecting cases)).  Thus, Akins cannot state a claim against Richter for failing to intervene in the alleged retaliation.

13

Even if an official could be liable for failure to prevent retaliation, Akins fails to allege facts showing that Richter "was in a position to intervene." *Hadley v. Gutierrez*, 526 F.3d 1324, 1331 (11th Cir. 2008). As the Court explained when it dismissed this claim at the screening stage, Akins "does not allege facts suggesting Richter had an opportunity to prevent Velasquez from filing the disciplinary report." (Doc. 6 at 3-4). Thus, the claim against Richter must be dismissed.[3]

Accordingly, it is

**ORDERED:**

Defendant H. Velasquez's Motion to Dismiss (Doc. 21) is **GRANTED in part and DENIED in part**.

1.      The official-capacity claim against Velasquez is **DISMISSED**. The failure-to-intervene claim against Richter is also **DISMISSED**. This action will proceed on the retaliation claim against Velasquez in his individual capacity.

2.      Velasquez must answer the Amended Complaint within **14 days** of this Opinion and Order.

---

[3] The caption of the Amended Complaint lists R. Dixon and S. Panye as defendants. (Doc. 12 at 1). But in the body of that pleading, Akins writes, "Warden S. Panye is not a defendant herein this Complaint. Secretary Representative R. Dixon [is] not a defendant herein this Complaint." (*Id.* at 2). Moreover, Akins makes no factual allegations against either person. The Court thus concludes that Akins does not intend to sue Dixon or Panye.

14

3.      Akins's Motion to Hold in Abeyance Extension Request (Doc. 35) is

**DENIED as moot** because Akins timely filed a response to the Motion to

Dismiss.

**DONE** and **ORDERED** in Fort Myers, Florida on April 24, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA:  TpaP-2
Copies:  All Parties of Record

15